UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN J. O'BRIEN and ELIZABETH TAVARES,<br><br>        Plaintiffs,<br><br>v.<br><br>HON. ROBERT A. MULLIGAN (Ret.),<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)      Civil No. 19-11433-LTS<br>)<br>)<br>)<br>)<br>) |

<u>ORDER ON MOTION TO DISMISS (DOC. NO. 11)</u>

March 3, 2020

SOROKIN, J.

        Plaintiffs John J. O'Brien and Elizabeth Tavares filed a complaint on June 28, 2019 alleging three causes of action against the former Chief Justice of Administration and Management of the Massachusetts Trial Court, the Honorable Robert A. Mulligan (Ret.), arising out the loss of their employment with the Massachusetts Probation Department in late 2010 and early 2011 and subsequent federal criminal indictments and convictions.  <u>Doc. No. 1</u>.[1]  Judge Mulligan moves to dismiss the complaint in its entirety for failure to state a claim.  <u>Doc. No. 11</u>.  The motion is fully briefed.  For the reasons set forth below, the Court ALLOWS Judge Mulligan's motion to dismiss.

_____

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header.

I.    BACKGROUND[2]

Subject to the general superintendence powers of the Supreme Judicial Court ("SJC"), the Chief Justice for Administration and Management ("CJAM") has "general superintendence of the administration of the trial court."  G. L. c. 211B, § 9.  The division of the Massachusetts Trial Court responsible for overseeing the supervision of criminal offenders and serving the information needs of judges and lawyers in state criminal cases is the Probation Department.  G. L. c. 276, §§ 85, 90, 98; G. L. c. 211B, § 9.  The central office of the Probation Department is known as the Office of the Commissioner of Probation ("OCP").  United States v. Tavares, 844 F.3d 46, 49 (1st Cir. 2016).   "The OCP is responsible for staffing approximately 1,600 employees in about 100 probation offices throughout Massachusetts."  Id.  The Commissioner of Probation is the highest ranking official of the Probation Department.  G. L. c. 276, § 98.

---

[2]  The factual allegations that follow are drawn from the Complaint.  Doc. No. 1.  The Court accepts all non-conclusory facts alleged in the Complaint as true, Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011), and draws all reasonable inferences in favor of the plaintiffs, Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).

The Complaint quotes from and refers to various documents, such as the Report of the Independent Counsel (the Ware Report) and various orders and statements issued by the Supreme Judicial Court (SJC).  Many of these quotations and references are reproduced verbatim in this Memorandum and Order as they are alleged in the Complaint.  However, in deciding a Rule 12(b)(6) motion, a court may also "consider documents the authenticity of which [is] not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint . . . even when the documents are incorporated into the movant's pleadings." Lambert v. Fiorentini, No. 19-1406, 2020 U.S. App. LEXIS 2287, at *3 (1st Cir. Jan. 24, 2020) (internal quotation marks and citations omitted); see also Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (the court may consider documents attached to or fairly incorporated into the complaint and facts susceptible of judicial notice).  The cited orders and statements issued by the SJC and the Ware Report are central to Plaintiffs' Complaint; their authenticity is not disputed.  The Court therefore draws upon them as well in presenting and discussing the relevant facts.

A.   The Hiring of O'Brien and Tavares

In 1997, Plaintiff O'Brien was appointed the Commissioner of Probation by the Honorable John J. Irwin, Jr., who was the CJAM of the Massachusetts Trial Court.  Doc. No. 1 ¶ 7.  At the time, the governing statute, G. L. c. 276, § 98, which provides for the establishment of an office of probation under the supervision, direction and control of a commissioner of probation, was silent as to any specific term of appointment for the Commissioner or any procedure for the Commissioner's removal.[3]  St. 1993, c. 12, §§ 11, 12; Doc. No. 1 ¶¶ 8, 15.  Because of this silence, O'Brien viewed himself as having a "lifetime appointment" and believed that neither the CJAM nor "any other state official [had] the power to terminate [him]."[4]  Doc. No. 1 ¶¶ 15, 77-79, 91.

"Prior to 2001, local judges had authority to appoint and promote probation employees, subject to the approval of the [CJAM].  In 2001, new legislation gave the Commissioner the 'exclusive authority' for probation hiring and promotion, although his appointments were still subject to the approval of the CJAM."  Tavares, 844 F.3d at 50.  The CJAM could reject any proposed appointment if such appointment "was not done in accordance with the Trial Court Policies and Procedures Manual for the Probation Department."  Doc. No. 1 ¶ 9.

In 1998, O'Brien appointed Plaintiff Tavares as Deputy Commissioner in charge of the Programs Division, responsible for drug testing, community supervision, collaborating with the

---

[3] Following the events described infra, the Massachusetts Legislature amended § 98 to provide that "[t]he commissioner shall serve a term of 5 years" and that "[t]he commissioner shall be appointed, and may be removed, by the chief justice of the trial court and the court administrator, with the advice of the chief justice of the juvenile court, the chief justice of the superior court, the chief justice of the district court, the chief justice of the probate and family court and the chief justice of the Boston municipal court."  M.G.L. c. 276 § 98.

[4] The Court does not resolve the question of whether the absence of either a specifically identified procedure for the Commissioner's removal or a specific duration of his term of office actually gave rise to a "lifetime appointment."

Office of Community Corrections, and the Electronic Monitoring Program.  Id. ¶ 18.  In 2000, O'Brien appointed Tavares to the position of Second Deputy Commissioner of Probation.  Id. ¶ 19.

In 2003, the Defendant, Judge Mulligan, took over as the CJAM.  Id. ¶ 11.  In 2008, O'Brien appointed Tavares as First Deputy Commissioner of Probation—the second highest ranking official in Office of Probation after the Commissioner himself.  Id. ¶ 19.  Tavares's employment was governed by the Policies and Procedures Manual, which provided that she could only be terminated for cause.  Id. ¶¶ 20, 55.

O'Brien and Judge Mulligan had a contentious relationship from the start.  Id. ¶¶ 12, 42, 43; Tavares, 844 F.3d at 52.  "Sometime in 2006, Judge Mulligan grew suspicious of O'Brien's appointments [of probation officers] and asked his HR department to red-flag any cases that they though were unusual."  Tavares, 844 F.3d at 52 (internal quotation marks omitted).  O'Brien resisted Judge Mulligan's efforts to exercise meaningful oversight over O'Brien's appointments of probation officers as impinging on his "exclusive appointment authority" over probation officers under G. L. c. 276, § 83, as then in effect.  Doc. No. 1 ¶¶ 13, 26, 41, 46, 84; Tavares, 844 F.3d at 52.  O'Brien alleges that Judge Mulligan tried "to find something on him" and push him out.  Doc. No. 1 ¶¶ 14, 42-43.

B.  The Boston Globe Spotlight Article and O'Brien's Suspension

On May 23, 2010, the Boston Globe Spotlight Team released an in-depth report about the hiring practices in the Probation Department.  The report stated in relevant part that "[a]fter 12 years in charge, Jack O'Brien has transformed the Probation Department from a national pioneer of better ways to rehabilitate criminals into an organization that functions more like a private employment agency for the well connected . . . ."  Tavares, 844 F.3d at 52 (quoting Scott Allen, Agency Where Patronage Is Job One, Bos. Globe, May 23, 2010).  The article went on to state that

"O'Brien's agency now employs at least 250 friends, relatives, and financial backers of politicians and top court officials, the Spotlight review found . . ." Doc. No. 12-1 at 1 (copy of Boston Globe article). The Spotlight article quoted Judge Mulligan as being critical of certain "oversight" issues at the Probation Department. Doc. No. 1 ¶ 28.

On May 24, 2010—the day after the Boston Globe published its article—Judge Mulligan suspended O'Brien. Id. ¶ 24. On the same day, the SJC issued an Order stating in relevant part:

> It has come to the attention of the Justices that the hiring and promotion of employees within the Probation Department of the Trial Court allegedly are based on reasons other than merit, which is a matter of concern to the public and all members of the judicial branch. Certain other alleged practices and management decisions with the Probation Department have also been called into question. The Chief Justice and the Justices of this Court, concerned not only with the proper conduct [of] judicial administration, but also with the public's perception of the integrity of all aspects of the judicial branch, have determined that a prompt, full inquiry into the practices and procedures of the Probation Department as they relate to these allegations should be undertaken immediately.

Doc. No. 12-2 (copy of docket in In the Matter of the Probation Department of the Trial Court, SJC No. OE-123) at 3. The Complaint alleges that Judge Mulligan and the SJC had advance notice of the content of the Spotlight article and were preparing to act on it before its release. Doc. No. 1 ¶¶ 38, 39, 82.

C. The Report of the Independent Counsel (the Ware Report)

In the same Order, the Justices of the SJC appointed Paul F. Ware, Jr. as Independent Counsel to investigate the "alleged improprieties with respect to the hiring and promotion of employees with the Probation Department, as well as other practices and managed decisions with the Probation Department that have been called into question . . . ." and to make recommendations on any findings of misconduct. Doc. No. 12-2 at 3.

On November 9, 2010, the Independent Counsel issued his Report. Doc. No. 12-4 (copy of Ware Report). Based on his investigation, the Independent Counsel determined that "[h]iring

and promotion processes have been fraudulently orchestrated from beginning to end in favor of connected candidates.  The fraud begins [at the] top with Commissioner O'Brien, and it extends through most of the hierarchy of the Department who participate in interviewing candidates for hiring and promotion . . . ."  Id. at 18.  The Independent Counsel found that O'Brien and Tavares had conducted a hiring scheme to ensure that candidates recommended by legislators and other high-ranking officials would obtain their desired positions regardless of qualification so that, in turn, the Probation Department might receive more generous appropriations from the Legislature. Id. at 35-43.  The scheme was accomplished through a systematic corruption of the interview process.  Id. at 24-26.

The Independent Counsel "expresse[d] no final view on the criminal guilt or innocence of any individual discussed in [his] Report," but "recommend[ed] that the appropriate federal and state law enforcement authorities be made aware of the findings in this Report so that they may decide what action, if any, should be taken following submission of this Report."  Id. at 63.  In so doing, the Independent Counsel identified O'Brien and Tavares, among several others, as "[p]otential targets of a criminal investigation."  Id. at 43.

On November 18, 2010, the SJC released the Ware Report to the public and issued Orders that referred the Ware Report to the United States Attorney for the District of Massachusetts "for such action as [she] may deem appropriate" and that directed Judge Mulligan, in consultation with the Acting Commissioner of Probation, Ronald Corbett, "forthwith [to] take such steps as may be necessary to remove those senior officials found most responsible for the reported abuses in the hiring and promotion processes," and to "initiate disciplinary proceedings they deem appropriate against those other employees who participated in those abuses."  Doc. No. 12-5 (Statement of the

Justices of the SJC regarding Ware Report, November 18, 2010) at 2; Doc. No. 1 ¶ 53.  The SJC also noted:

> The CJAM has informed the Justices that he will immediately commence proceedings to terminate Commissioner of Probation John J. O'Brien and that, acting in concert with the Acting Commissioner, he will immediately place on administrative leave First Deputy Commissioner Elizabeth V. Tavares, [and other high-ranking Probation Office officials] pending the conclusion of disciplinary hearings, and that proceedings to discipline each of them, which discipline could include termination, will commence immediately.

Doc. No. 1 ¶ 53 (quoting Doc. No. 12-5 at 2) (modification added).

D.   The Resignations of O'Brien and Tavares

After the Independent Counsel released his Report, Judge Mulligan notified O'Brien that there would be a disciplinary hearing, over which he—Chief Justice Mulligan—would be presiding.  Doc. No. 1 ¶ 50.  O'Brien's counsel requested access to the Independent Counsel's complete Report, together with its exhibits, which "formed the basis for the [disciplinary] hearing. Id. ¶ 51.  O'Brien's counsel also asked that Judge Mulligan recuse himself from the hearing "on account of his admitted animus towards" O'Brien.  Id. ¶ 52.  Both requests were denied.  Id. ¶¶ 51-52.  Because Judge Mulligan refused "to recuse himself from the disciplinary hearing despite his well-established bias against Mr. O'Brien," and because O'Brien interpreted the SJC's statement that proceedings to terminate him would commence immediately as meaning that he "was being terminated prior to any hearing taking place," O'Brien resigned from his position as Commissioner of Probation, effective December 31, 2010.  Id. ¶ 56.

Following the release of the Ware Report, Acting Probation Commissioner Ronald Corbett placed Tavares on administrative leave for her alleged role in patronage hiring within the Probation Department.  Id. ¶ 57.  A disciplinary hearing was scheduled for January 19, 2011.  Id.  Tavares's counsel asked that the hearing be postponed indefinitely to await the results of the investigations

7

being performed by the Office of the Massachusetts Attorney General and the U.S. Attorney's Office so that she could provide a proper defense to the disciplinary charges. Id. ¶ 58. Tavares's counsel also asked the Trial Court for a complete set of transcripts and exhibits generated in course of the Independent Counsel's investigation of the Probation Department, as well as access to certain trial court employees and to have them appear at the hearing as part of her defense. Id. ¶¶ 59-60. Counsel for the Trial Court denied all of these requests. Id. ¶ 60.

Tavares also requested a description from the Trial Court of how the disciplinary hearing would be conducted, the evidence that would be presented, and the identity of any witnesses that would be called to testify against her, but she was denied this information. Id. ¶ 61. "The only response that Ms. Tavares received from the Trial Court, through counsel Dan Sullivan, was that if Ms. Tavares appeared at the disciplinary hearing, she would be terminated." Id. ¶ 62. "Rather than appear at a closed-door disciplinary hearing in which she was denied a description of the charges against her, denied access to information necessary for her to respond to the charges and offer a defense at the hearing, and denied any information regarding how [the] hearing was going to be conducted, Ms. Tavares resigned from her position." Id. ¶ 63.

E.  The Indictments and convictions of O'Brien and Tavares

O'Brien and Tavares were indicted on federal criminal charges in this District in 2012. Tavares, 844 F.3d at 53. "The second superseding indictment alleged that, from 2000 to 2010, [O'Brien and Tavares] implemented a sham merit-based hiring system and that O'Brien 'falsely certified to the CJAM that the candidate for employment had been hired pursuant to the procedures mandated by the Manual,' that is to say, a merit-based hiring system." Id. (quoting second superseding indictment). O'Brien and Tavares were charged with conspiracy under the federal Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1962(d), as well as

with a substantive RICO violation under 18 U.S.C. § 1962(c), and several counts of mail fraud under 18 U.S.C. §§ 1341, 2.  Id.  Following a forty-seven day trial, O'Brien and Tavares were found guilty of RICO conspiracy, the substantive RICO violation, and four of nine counts of mail fraud on July 24, 2014.  Id.; Doc. No. 12-6 (copy of docket in U.S. v. O'Brien, et al., Crim. No. 12-40026) at 65, Dkt. No. 579.

On December 19, 2016, the First Circuit reversed Plaintiffs' convictions.  Tavares, 844 F.3d at 54.  The court concluded that while "O'Brien, along with the other defendants and many other members of the Probation Department, misran the Probation Department and made efforts to conceal the patronage hiring system, . . . the Government has not in fact demonstrated that the conduct satisfies the appropriate criminal statutes."  Id. at 53-54.

O'Brien and Tavares brought this action on June 28, 2016.  Doc. No. 1.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Courts must "take all factual allegations [in the Complaint] as true and . . . draw all reasonable inferences in favor of the plaintiff."  Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007).  The complaint must also "set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'"  Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

III.     DISCUSSION

The Complaint alleges three causes of action, each pursuant to 42 U.S.C. § 1983: (a) violation of equal protection, under a "class of one" theory (Count I); (b) violation of procedural and substantive due process (Count II); and (c) abuse of process (Count III).  The first two causes of action relate to conduct in which Judge Mulligan allegedly engaged following the release of the Ware Report in November 2010 and which lead to the resignations of O'Brien and Tavares in late 2010 and early 2011 respectively.[5]  Doc. No. 1 ¶¶ 82-83, 95-97.  The third cause of action is based on the allegation that Judge Mulligan "caused the federal indictment and wrongful conviction of the Plaintiffs in federal court."  Id. ¶ 104.

A.     Count I ("class of one" equal protection violation)

Plaintiffs' "class of one" equal protection claim fails because such claims are not cognizable in the public employment context and because the claim is time barred.

1.     Count I not cognizable in the public employment context.

The Supreme Court has rejected "class of one" equal protection claims in the public employment context:

> The question in this case is whether a public employee can state a claim under the Equal Protection Clause by alleging that she was arbitrarily treated differently from other similarly situated employees, with no assertion that the different treatment was based on the employee's membership in any particular class.  We hold that such a 'class-of-one' theory of equal protection has no place in the public employment context.

Engquist v. Or. Dep't of Agric., 553 U.S. 591, 594 (2008).

---

[5] For purposes of deciding Defendant's motion to dismiss, the Court assumes without deciding that Plaintiffs have pled sufficient facts from which it may be plausibly inferred that each of their respective resignations constituted a constructive discharge.  Even with that assumption, the Court need not resolve whether either Plaintiff has actually stated a federal due process claim because, as explained in the text, any such claim is barred by the applicable statute of limitations.

The Court therefore ALLOWS Judge Mulligan's motion to dismiss Count I of the Complaint.

2.  <u>Count I is time barred.</u>

Count I is also time barred.  "[I]t is well-established that § 1983 claims borrow the forum state's statute of limitations."  <u>Acevedo-Pérez v. United States</u>, 768 F.3d 51, 56 (First Cir. 2014) (citing <u>City of Rancho Palos Verdes v. Abrams</u>, 544 U.S. 113, 124 (2005) (42 U.S.C. § 1988 "is a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims.") (internal quotation marks and citation omitted)).   In Massachusetts, the relevant limitations period—that for tort actions—is three years.  <u>See, e.g.</u>, <u>Poy v. Boutselis</u>, 352 F.3d 479, 483 (1st Cir. 2003) (three-year limitations period provided for personal injury claims by G. L. c. 260, § 2A applies in § 1983 excessive force action against police officer).

"Though § 1983 borrows the limitations period itself from local law, the accrual date for a § 1983 claim is set by federal law."  <u>Acevedo-Pérez</u>, 768 F.3d at 56 (citing <u>Morán Vega v. Cruz Burgos</u>, 537 F.3d 14, 20 (1st Cir. 2008)).  Under federal law, such a cause of action accrues "when the plaintiff knows, or has reason to know of the injury on which the action is based, and a plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt."  <u>Morán Vega</u>, 537 F.3d at 20 (internal quotation marks and citations omitted).

O'Brien and Tavares allege that Judge Mulligan violated their rights to equal protection under the law:

when he communicated with the Boston Globe about the Spotlight Articles [sic] prior to its release about patronage hiring in the Probation Department; suspended only Mr. O'Brien and his immediate deputies, for patronage hiring that was common practice in Massachusetts; and when he worked with the SJC to appoint Independent Counsel Paul Ware to investigate criminal charges against Mr. O'Brien and his deputies but did not take any action against any other Trial Court hiring authorities . . .

There was no rational basis for the different treatment that the Defendant gave to Mr. O'Brien and Ms. Tavares compared to other state employees, as shown by the fact that . . . other Trial Court hiring authorities, also engaged in widespread patronage hiring but the Defendant did not investigate, suspend or otherwise discipline any other Trial Court employees . . . .  The Defendant's conduct as set forth above establishes the basis for the conduct was not to eradicate patronage or some other effort to reform the Trial Court. The Defendant's intention was to eradicate Mr. O'Brien and his deputies, and only them, from the Trial Court in violation of their right to equal protection under the law.

Doc. No. 1 ¶¶ 82, 83.

Even assuming, as the Court must, that Plaintiffs' allegations regarding Judge Mulligan's conduct are true, they relate to conduct that took place more than eight years before Plaintiffs brought suit.  And, Plaintiffs' own allegations establish that they knew of their alleged injury arising from Judge Milligan's alleged differential treatment of them at the time of their injury. Plaintiffs' equal protection claim is thus barred by the applicable three-year statute of limitations. The Court therefore ALLOWS Judge Mulligan's motion to dismiss Count I of the Complaint for this additional reason.

B.      Count II (procedural and substantive due process)

Plaintiffs' procedural and substantive due process claim is also time barred.  The only conduct to which Plaintiffs point in connection with this claim is to conduct occurring in late 2010 (as to O'Brien) and early 2011 (as to Tavares):

The Defendant, acting under the color of law in his position as CJAM, knowingly deprived Mr. O'Brien of his due process rights and property interest in the position of Commissioner of Probation, which he was expressly provided by statute, when he communicated his decision to terminate Mr. O'Brien in the November 2010 SJC Statement before Mr. O'Brien was provided a disciplinary hearing.

The Defendant, acting under the color of law in his position as CJAM, deprived Ms. Tavares of her due process rights and property interest in the position of Deputy Commissioner of Probation when he denied her a description of the charges against her, denied access to the information necessary for her to respond to the charges and offer a defense at the hearing, and denied any information regarding how the hearing was going to be conducted. The Defendant further deprived Ms. Tavares of her due process rights when he informed her, through counsel prior to the disciplinary hearing, that she would be terminated if she appeared at the hearing.

The Defendant, as a result of his conduct described above, has shown a reckless or callous indifference to the federally protected rights of the Plaintiff. The Defendant's conduct regarding Mr. O'Brien and Ms. Tavares' employment was arbitrary and capricious and a shocking abuse of government power that was not keyed to any legitimate government interest, it was solely aimed toward eliminating Mr. O'Brien and Ms. Tavares from the Probation Department.

Doc. No. 1 ¶¶ 95-97.

Because the conduct Plaintiffs allege in support of their procedural and substantive due process claim took place more than three years before they brought suit, and because their Complaint makes clear that they knew of the conduct at the time it occurred, this claim, like their equal protection claim, is also barred by the applicable three-year statute of limitations. The Court therefore ALLOWS Judge Mulligan's motion to dismiss Count II of the Complaint.

C.      Count III (abuse of process)

Count III, which asserts an "abuse of process" claim pursuant to Section 1983, is based on the allegation that Judge Mulligan "caused the federal indictment and wrongful conviction of the Plaintiffs in federal court." Doc. No. 1 ¶ 104. Leaving aside the serious question of whether the Complaint supports a plausible inference that Judge Mulligan "caused" Plaintiffs' indictments, this claim fails as a matter of law because "abuse of process—as a claim separate from a claim that

there was no probable cause to make the arrest or institute the prosecution—is not cognizable as a civil rights violation under § 1983." <u>Santiago v. Fenton</u>, 891 F.2d 373, 388 (1st Cir. 1989).  In any event, as explained below, there was probable cause to institute Plaintiffs' prosecution.  The Court therefore ALLOWS the motion to dismiss Count III of the Complaint.

       D.     <u>Malicious Prosecution</u>

Plaintiffs make no explicit allegation of malicious prosecution, assert no such cause of action in their Complaint, and make no request to amend their Complaint to include such a claim. <u>See generally</u>, <u>Doc. No. 1</u> (Complaint); <u>Doc. No. 17</u> (opposition to motion to dismiss).  That is the end of the matter as to a possible claim of malicious prosecution.

Nevertheless, citing <u>McDonough v. Smith</u>, 139 S. Ct. 2149 (2019)—a case addressing when the statute of limitations begins to run in federal malicious prosecution actions—Plaintiffs effectively ask the Court to read such a cause of action into their Complaint:

> The Plaintiffs here, like the plaintiff in <u>McDonough</u>, are challenging the integrity of the criminal proceedings initiated and promoted by the Defendant, who utilized the Boston Globe, the SJC, and Attorney Ware.  While the Defendant was not the prosecutor, the Plaintiffs' Complaint sufficiently alleges he was providing the information that led to the federal prosecution being challenged in the present matter.

<u>Doc. No. 17 at 15</u>.  Such a cause of action—had it been asserted—would also fail to state claim. "[A] plaintiff may bring a suit under § 1983 . . . if he can establish that: 'the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.'"  <u>Hernandez-Cuevas v. Taylor</u>, 723 F.3d 91, 101 (1st Cir. 2013) (quoting <u>Evans v. Chalmers</u>, 703 F.3d 636, 647 (4th Cir. 2012)).

Even assuming that Judge Mulligan can plausibly be said to have "caused" the federal indictments brought against O'Brien and Tavares—an issue the Court does not decide—Plaintiffs cannot show that the indictments were without probable cause for, as the Supreme Court recently

explained, "an indictment fair upon its face, and returned by a properly constituted grand jury, . . . conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged." Kaley v. United States, 134 S. Ct. 1090, 1097 (2014) (internal quotation marks and citation omitted).   Plaintiffs' federal malicious prosecution claim—had they asserted it— would therefore also fail as a matter of law.[6]

IV.     CONCLUSION

For the reasons presented, the Court ALLOWS Judge Mulligan's motion to dismiss Plaintiffs' complaint (Doc. No. 11) WITH PREJUDICE.  A judgment of dismissal shall issue.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[6] Although Plaintiffs have not asserted, have not requested leave to assert, and have not argued a common law malicious prosecution claim, such a claim would also require plausibly alleging a lack of probable cause. Correllas v. Viveiros, 572 N.E.2d 7 (Mass. 1991) (to succeed on a claim of malicious prosecution, the plaintiff must prove, among other elements, that the defendants instituted a criminal process against the plaintiff with malice and without probable cause).  Because in light of the facts alleged in the Complaint, Plaintiffs cannot establish a lack of probable cause, a state law malicious prosecution claim is also doomed to fail.